IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | CASE NO. 1:10-mc-00025-DCN |
| | ) | |
| AMFIN FINANCIAL CORPORATION, | ) | JUDGE DONALD C. NUGENT |
| *et al.*,[1] | ) | |
| | ) | |
| Debtors. | ) | |

---

DEBTORS' OPPOSITION TO MOTION OF THE FEDERAL DEPOSIT INSURANCE
CORPORATION AS RECEIVER FOR THE ENTRY OF AN ORDER
PURSUANT TO 28 U.S.C. § 157(D) WITHDRAWING THE REFERENCE OF
CERTAIN PROCEEDINGS WITHIN THE CHAPTER 11 PROCEEDINGS

---

[1]  The Debtors are: AmTrust Financial Corporation (nka AmFin Financial Corporation), AmTrust Real Estate Investments, Inc. (nka AmFin Real Estate Investments, Inc.), AmTrust Insurance Agency, Inc. (nka AmFin Insurance Agency, Inc.), AmTrust Investments Inc. (nka AmFin Investments Inc.), AmTrust Properties Inc. (nka AmFin Properties Inc.) and AmTrust Management Inc. (nka AmFin Management Inc.).

## STATEMENT OF THE ISSUE TO BE DECIDED

Whether pursuant to 28 U.S.C. 157(d) this Court must withdraw the reference of matters pending before the Bankruptcy Court.  Alternatively, whether pursuant to 28 U.S.C. 157(d) this court "for cause shown" should withdraw the reference of matters pending before the Bankruptcy Court.

## SUMMARY OF THE ARGUMENT AND TABLE OF CONTENTS

The Debtors oppose the request of the FDIC as Receiver of AmTrust Bank ("FDIC-R") for Mandatory Withdrawal of Reference Pursuant to 28 U.S.C. § 157(d) because it is unjustified, and oppose the request of the FDIC-R for Permissive Withdrawal of Reference because it is unwarranted and unnecessary.

I.  Mandatory Withdrawal of Reference is Improper ............................................................2

    A.  Matters Referred Pursuant to General Order 84 Remain with the Bankruptcy Court Unless this Court is Required to Order Withdrawal of Reference .........................................................................................2

    B.  Mandatory Withdrawal of the Reference Should Occur Only When "Substantial and Material" Application of Non-Bankruptcy Statutes is Required..............................................................................................3

    C.  Resolution of the Relevant Issues Does Not Require Substantial and Material Analysis or Application of Title 12 ....................................................6

    D.  The Issues to be Determined Concern Matters of Bankruptcy Law and Interpretation of 11 U.S.C.  § 365(o) ............................................................10

    E.  Case Law Cited by the FDIC-R is Inapplicable to the Proceedings Before this Court...................................................................................................12

II.  Permissive Withdrawal of Reference is Inappropriate and Should be Denied ...................................................................................................................15

CONCLUSION...................................................................................................................19

i

# TABLE OF AUTHORITIES

Page

Cases

*Alfonseca-Baez v. Doral Fin. Corp.*,
    376 B.R. 70, 73 (D.P.R. 2007) ............................................................................5

*Anderson v. Countrywide Home Loans, Inc. (In re Anderson)*,
    395 B.R. 7 (E.D. Mich. 2008) ..........................................................5, 11, 12, 17, 18

*In re Auto Specialties Mfg. Co.*,
    134 B.R. 227 (W.D. Mich. 1990) ........................................................................5

*In re Baldwin-United Corp.*,
    57 B.R. 751 (S.D. Ohio 1985) .............................................................................5

*Blurton v. Fesmire (In re Southern Indus. Mech. Corp.)*,
    266 B.R. 827 (W.D. Tenn. 2001).........................................................................5

*Buckeye Ret. Co., L.L.C., Ltd. v. Hake (In re Hake)*, Case No. 4:06 MC 00111, 2007 U.S.
    Dist. LEXIS 31238 (N.D. Ohio Apr. 27, 2007) ...................................16, 17, 18

*Elza v. Higgason (In re Elza)*, Nos. 6:05-346, 6:05-372, 2005 U.S. Dist. LEXIS 27023
    (E.D. Ky. Nov. 8, 2002) .....................................................................................5

*In re Federated Dept. Stores, Inc.*,
    189 B.R. 142 (S.D. Ohio 1995) ...........................................................................5

*Franklin Savings Assoc. v. Office of Thrift Supervision*,
    150 B.R. 976 (D. Kan. 1993) ...............................................................10, 13, 14

*In re Franklin Savings Corp v. Office of Thrift Supervision*, Case No. 91-41518-11, Adv
    No. 92-7154, Adv. No. 93-7001, 1994 Bankr. LEXIS 46 (Bankr. D. Kan. Jan 18,
    1994) ................................................................................................................14

*Franklin Savings Corp. v. Office of Thrift Supervision*, 303 B.R. 488 (D. Kan. 2004).................14

*Hertzberg v. Loyal Amer. Life Ins. Co.*,
    No. 88-73402, 1988 U.S. Dist. LEXIS 17724 (E.D. Mich. Dec. 7, 1988) .........................5

*Holland v. LTV Steel Co., Inc.*,
    288 B.R. 770 (N.D. Ohio 2002).........................................3, 5, 9, 10, 16, 17, 18

*In re Holman*,
    325 B.R. 569 (E.D. Ky. 2005) .............................................................................5

i

*In re Johns-Manville Corp.*,
  63 B.R. 600 (S.D.N.Y. 1986) .........................................................................5

*Lubin v. Cincinnati Ins. Co.*,
  411 B.R. 801 (N.D. Ga. 2009) ......................................................................12

*In re Manhattan Inv. Fund Ltd.*,
  343 B.R. 63 (S.D.N.Y. 2006) .........................................................................5

*In re Mathson Indus., Inc.*,
  408 B.R. 888 (E..D Michigan 2009) .............................................................17

*Michigan Milk Producers Assoc. v. Hunter*,
  46 B.R. 214 (N.D. Ohio 1985) ........................................................................5

*O'Neal v. Countrywide Home Loans, Inc. (In re O'Neal)*, Case No. 5:08-MC-00043,
  2008 U.S. Dist. LEXIS 64437 (N.D. Ohio August 20, 2008) ...................16, 18

*In re Orion Pictures Corp.*, 4 F.3d 1095 (2nd Cir. 1993) ...........................................17

*In re Mid America Entm't Plus, Inc.*,
  135 B.R. 419 (D. Kan. 1991) ...................................................................12, 13

*Perdue v. Federal Deposit Ins. Corp. as Receiver for Washington Mutual Bank (In re
  Perdue)*, Case No. 1:04 MC 00073, 2010 U.S. Dist. LEXIS 35262 (N.D. Ohio
  March 11, 2010) .........................................................................3, 5, 6, 15

*Prince v. Countrywide Home Loans, Inc.*,
  No. 1:08-0058, 2008 U.S. Dist. LEXIS 80156 (M.D. Tenn. Oct. 8, 2008) ........................6

*In re White Motor Corp.*,
  2 B.R. 693 (N.D. Ohio 1984) ................................................................. *passim*

*Wittes v. Interco Inc.*,
  137 B.R. 328 (E.D. Mo. 1992) .........................................................................5

*Resolution Trust Co. v. First Corp., Inc. (In re First Corp., Inc.)*,
  973 F.2d 243 (4th Cir. 1992) .......................................................................10

*In re Overland Park Fin. Corp.*,
  236 F.3d 1246 (10th Cir. 2001)) ..................................................................10

*Wolkowitz v. FDIC (In re Imperial Credit Industry, Inc.)*,
  527 F.3d 959 (9th Cir. 2008) .......................................................................10

Statutes

11 U.S.C. 365 ......................................................................................................... *passim*

11 U.S.C. 502 ..............................................................................................................1, 6

11 U.S.C. 507 ..........................................................................................................6, 17, 18

12 U.S.C. 1461 ...............................................................................................................11

12 U.S.C. 1821 ...............................................................................................................13

28 U.S.C. 157 ........................................................................................................ *passim*

28 U.S.C. 1334...................................................................................................................2

Miscellaneous

General Order No. 84 (N.D. Ohio July 16, 1986)...........................................................................2

The Debtors oppose the request of the FDIC as Receiver of AmTrust Bank ("FDIC-R") for Mandatory Withdrawal of Reference Pursuant to 28 U.S.C. § 157(d) because it is unjustified, and oppose the request of the FDIC-R for Permissive Withdrawal of Reference because it is unwarranted and unnecessary.

The FDIC-R seeks to have this Court exercise primary jurisdiction over two matters[2] that are wholly creatures of the Bankruptcy Code, *i.e.*, whether to disallow the FDIC-R's proof of claim as a priority claim under Section 502(b) of the Bankruptcy Code and whether AFC must cure a breached "commitment" under Section 365(o) of the Bankruptcy Code. Those issues arise under and exist only in bankruptcy cases under Chapter 11 and Bankruptcy Courts are designed and well-equipped to resolve them. The FDIC-R fails to present any reasonable basis for this Court to upset the natural resolution of these issues by the Bankruptcy Court. Rather, the FDIC-R weakly suggests that this Court should withdraw the reference because each matter tenuously relates to a law that affects interstate commerce. The FDIC-R position, however, tortures 28 U.S.C. § 157(d) and the relevant case law.

The relief sought by the FDIC-R concerns the most urgent issue in the Chapter 11 cases: Whether, pursuant to 11 U.S.C. § 365(o), the FDIC-R has the right to compel AmFin Financial Corporation (fka AmTrust Financial Corporation) ("AFC") to make an immediate cure payment

---

[2] The Motion to Withdraw Reference requested that this Court determine three related matters. One of those matters was the *Debtors' Motion for an Order Estimating at $0.00 and Disallowing in its Entirety the FDIC's Alleged Priority Unsecured Claim for Capital Maintenance* (the "Disallowance Motion") (Withdrawal of Reference Motion, p. 2). In view of the filing by the FDIC-R of *FDIC's Motion Under Bankruptcy Code Section 365(o) Requiring AFC to Cure "Capital Maintenance Commitments" Made to the OTS* and its Proof of Claim, the Debtors withdrew the Disallowance Motion without prejudice. Effectively, both of the two remaining matters turn on whether the FDIC-R has a valid cure claim under Section 365(o) of the Bankruptcy Code.

1

in excess of $500 million in respect of an alleged commitment to infuse capital into AmTrust

Bank?  Resolution of this issue will likely determine whether these cases continue in Chapter 11

or convert to Chapter 7.

Under the (faulty) logic presented by the FDIC-R, the contested issues require

withdrawal of the reference because they implicate certain provisions of Title 12 of the United

States Code.  Yet, had Congress intended this result it could easily have legislated mandatory

reference withdrawal of Section 365(o) matters in 28 U.S.C. § 157(d).  For instance, when

Congress wished to require reference withdrawal for personal injury/wrongful death action cases,

Congress explicitly said so.  *See* 28 U.S.C. § 157(a)(5).  Congress has not, however, amended the

law to require mandatory withdrawal of the reference for claims arising under 11 U.S.C. § 365(o).

Furthermore, permissive withdrawal is unnecessary and inappropriate.  The specialized

expertise of the Bankruptcy Court in general, and by the particular bankruptcy judge to whom

this matter is assigned, Judge Morgenstern-Clarren, dictate that the reference should not be

withdrawn and the contested matters should remain with the bankruptcy court for resolution in

the context of the entire Chapter 11 proceedings.  If, at the conclusion of the proceedings before

the Bankruptcy Court, the losing party wishes to appeal, it may do so and there will be a factual

record developed by the Bankruptcy Court.

I.      Mandatory Withdrawal of Reference is Improper

      A.      Matters Referred Pursuant to General Order 84 Remain with the Bankruptcy
             Court Unless this Court is Required to Order Withdrawal of Reference

The Bankruptcy Amendments and Federal Judgeship Act of 1984 vests district courts

with original jurisdiction over all cases arising under Title 11 of the United States Code, but

permit the district court to refer bankruptcy cases automatically to the bankruptcy judges for the

district.  *See* 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a); General Order No. 84 (N.D. Ohio

July 16, 1986) (referring all bankruptcy matters in the Northern District of Ohio to the bankruptcy judges in that district). Under limited circumstances, Congress permits the district court to withdraw the reference from the bankruptcy court:

> [t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

The burden of demonstrating withdrawal of reference is on the FDIC-R as the moving party. *Holland v. LTV Steel Co., Inc.*, 288 B.R. 770, 773 (N.D. Ohio 2002).

> B. Mandatory Withdrawal of the Reference Should Occur Only When "Substantial and Material" Application of Non-Bankruptcy Statutes is Required

The seminal decision on mandatory withdrawal of the reference is the decision of Senior Judge Ann Aldrich a quarter of a century ago, *In re White Motor Corp.*, 42 B.R. 693 (N.D. Ohio 1984). The decision "has been adopted by nearly all the districts in the Sixth Circuit, including the Northern District of Ohio." *Perdue v. Federal Deposit Ins. Corp. as Receiver for Washington Mutual Bank (In re Perdue)*, Case No. 1:04 MC 00073, 2010 U.S. Dist. LEXIS 35262 at *9 (N.D. Ohio March 11, 2010). In *White Motor*, Judge Aldrich was confronted with whether to withdraw the reference with respect to litigation concerning the claims of the Pension Benefit Guaranty Corporation ("PBGC") because resolution of those claims necessitated consideration of the Employee Retirement Income Security Act of 1974 ("ERISA") and the Internal Revenue Code ("IRC"). *White Motor Corp.*, 42 B.R. at 694.

Like the FDIC-R, the PBGC contended that certain post-petition claims were entitled to priority status. *Id.* at 694-95. The PBGC's claims were based on minimum funding standards

3

prescribed by ERISA and the IRC.  *Id.* at 695, 700.  Like the FDIC-R, the PBGC also claimed that it was entitled to file proof of claims against the estate based on certain commitments.  *Id.* at 697.  The PBGC's standing to assert its claims, as well as the amount and priority of the claims, were based on the PBGC's role as statutory guarantor of the pension benefits under section 4022 of ERISA.  *Id.* at 700.  The PBGC argued that it was mandatory for Judge Aldrich to withdraw the reference under Section 157(d) because resolution of the issues required an analysis of the implications of permitting a debtor to continue a pension plan without facing up to the cost of maintaining the plan as imposed by ERISA and the IRC.  *Id.* at 704.

The PBGC's request for mandatory reference withdrawal was rejected.  *Id.* at 705.  Judge Aldrich carefully examined the legislative history of Section 157(d) as well as the structure of the Bankruptcy Code.  In some of the most often quoted language on the subject, Judge Aldrich observed that Section 157(d) was "*not intended to become 'an escape hatch through which most bankruptcy matters will be removed to the district court.'*"  *White Motor*, 42 B.R. at 704 (emphasis added) (citing colloquy during the House debate on the final version of §157(d)).  "*[A]ny reading of §157(d) which limits bankruptcy court jurisdiction to questions arising solely under the Code would strip the court of much of its authority to resolve debtor-creditor disputes, since numerous Code provisions themselves require reference to other state and federal law.*"  *Id.* at 703 (emphasis added).  Judge Aldrich concluded that withdrawal is required "*not simply whenever non-Code federal statutes will be considered, but rather only when such consideration is necessary for the resolution of a case or proceeding.*"  *Id.* (partial emphasis in original and partial emphasis added).  While acknowledging that resolution of the PBGC's claims may raise some ERISA and IRC questions, Judge Aldrich denied the motion to withdraw finding that

resolution of the issues before her would not require *substantial and material consideration of non-Code statutes. Id.* at 705.

As recently as March 2010, Judge Economus in this District applied the "substantial and material approach" first announced by Judge Aldrich over 25 years ago. *See In re Perdue*, 2010 U.S. Dist. LEXIS 35262. Judge Aldrich's thoughtful and in depth opinion and the "substantial and material" approach remains at the core of the analysis of 28 U.S.C. 157(d) in this District and throughout the Sixth Circuit.[3] *In re Baldwin-United Corp.*, 57 B.R. 751 (S.D. Ohio 1985) (Judge Porter); *Michigan Milk Producers Assoc. v. Hunter*, 46 B.R. 214 (N.D. Ohio 1985) (Judge Walinski); *Hertzberg v. Loyal Amer. Life Ins. Co.*, No. 88-73402, 1988 U.S. Dist. LEXIS 17724 (E.D. Mich. Dec. 7, 1988) (Judge Freeman); *In re Auto Specialties Mfg. Co.*, 134 B.R. 227 (W.D. Mich. 1990) (Judge Bell); *In re Federated Dept. Stores, Inc.*, 189 B.R. 142 (S.D. Ohio 1995) (Judge Kinneary); *Blurton v. Fesmire (In re Southern Indus. Mech. Corp.)*, 266 B.R. 827 (W.D. Tenn. 2001) (Judge Bouie Donald); *Holland v. LTV Steel Company, Inc.*, 288 B.R. 770 (Bankr. N.D. Ohio 2002) (Judge Economus); *In re Holman*, 325 B.R. 569 (E.D. Ky. 2005) (Judge Forester); *Elza v. Higgason (In re Elza)*, Civil Action Nos. 6:05-346, 6:05-372, 2005 U.S. Dist. LEXIS 27023 (E.D. Ky. Nov. 8, 2002) (Judge Reeves); *Anderson v. Countrywide Home*

---

[3] Following Judge Aldrich's lead, district courts around the country continue to interpret §157(d) restrictively by applying the substantial and material standard to reject motions for withdraw of reference. *See, e.g., Alfonseca-Baez v. Doral Fin. Corp.*, 376 B.R. 70, 73 (D.P.R. 2007) (noting that courts "overwhelmingly" construe §157(d) narrowly and that "the mere presence of a non-title 11 issue, even if it is outcome-determinative, does not require mandatory withdrawal"; rather, withdrawal is required only if the non-code issues "dominate the bankruptcy issues"); *In re Manhattan Inv. Fund Ltd.*, 343 B.R. 63, 66-67 (S.D.N.Y. 2006) ("courts have narrowly construed the mandatory withdrawal provision. . . Consideration is 'substantial and material' when the case requires the bankruptcy judge to make a 'significant interpretation as opposed to simple application, of federal non-bankruptcy statutes'"); *In re Johns-Manville Corp.*, 63 B.R. 600, 603 (S.D.N.Y. 1986) (same); *Wittes v. Interco Inc.*, 137 B.R. 328, 329 (E.D. Mo. 1992) (same).

*Loans, Inc. (In re Anderson)*, 395 B.R. 7 (E.D. Mich. 2008) (Chief Judge Friedman); *Prince v. Countrywide Home Loans, Inc.*, No. 1:08-0058, 2008 U.S. Dist. LEXIS 80156 (M.D. Tenn. Oct. 8, 2008) (Judge Campbell); *In re Perdue*, 2010 U.S. Dist. LEXIS 35262 (N.D. Ohio Mar. 11, 2010) (Judge Economus).

C.      Resolution of the Relevant Issues Does Not Require Substantial and Material
        Analysis or Application of Title 12

The FDIC-R seeks a determination that AFC must make an "immediate cure of its commitments to maintain the capital of AmTrust Bank, pursuant to Section 365(o) of the Bankruptcy Code" and to allow the FDIC-R's proof of claim "as a priority claim arising from the failure of AFC to honor its commitments to maintain the capital of AmTrust Bank and the Debtors' repudiation of those agreements" (the priority claim proceeding pursuant to 11 U.S.C. § 502(b)).  Under applicable law, withdrawal of reference to determine the question of a priority claim or to determine an obligation under Section 365(o) as an obligation "to cure any defect under any commitment made by the debtor . . . to maintain the capital of an insured depository institution . . ." does not require "substantial material consideration of any non-bankruptcy code statutes."  To the contrary, the principal issue a court must confront in determining these issues is whether or not "a commitment" was made as defined under Section 365(o) of the Bankruptcy Code and whether, as a result of a breach of that alleged commitment, any obligation of priority status is afforded under Section 507 of the Bankruptcy Code:

> In a case under chapter 11 of this title, the trustee shall be deemed
> to have assumed (consistent with the debtor's other obligations
> under section 507), and shall immediately cure any deficit under,
> any commitment by the debtor to a Federal depository institutions
> regulatory agency . . . to maintain the capital of an insured
> depository institution, and any claim for a subsequent breach of the
> obligations thereunder shall be entitled to priority under section
> 507.

6

11 U.S.C. § 365(o).  No reference is made to Title 12 in Section 365(o) and the only analysis the Court needs to make is whether AFC made and breached a commitment within the meaning of Section 365(o).

Although the Debtors and FDIC-R have diametrically opposing positions on whether AFC made any "commitment" to infuse capital into AmTrust Bank, the resolution of this issue does not require a substantial and material analysis or application of Title 12.  The Debtors' position is straightforward.  AFC made no open-ended commitment to the Office of Thrift Supervision ("OTS") (or anyone else) to infuse capital in its subsidiary AmTrust Bank.[4]  And, the FDIC-R cannot point to a single document under which AFC undertook any such commitment.  At several points during the period leading up to the OTS placing AmTrust Bank into receivership on December 4, 2009, the OTS requested that AFC undertake a commitment to satisfy all of AmTrust Bank's capital requirements.  In every case, without exception, AFC declined in writing to make any such commitment to OTS.  There is no need for any court to perform a substantial or material analysis of the provisions of Title 12 to conclude whether or not to accept the Debtors' argument.

---

[4] In fact, the one and only time the FDIC-R correctly identifies a commitment by AFC during this process to infuse capital into AmTrust Bank, it misquotes the actual commitment and fails to state the commitment was satisfied in full.  As noted in the FDIC-R's Proof of Claim, the AFC Board unanimously approved a resolution to acknowledge that the Debtors had "previously committed to the Office of Thrift Supervision to make a capital contribution to AmTrust Bank." Proof of Claim, p. 14.  The FDIC fails to accurately portray this commitment.  The Board unanimously approved a resolution which acknowledged that the company had "previously committed to the Office of Thrift Supervision to make a capital contribution to the Bank of at least $10 million."  (AFC Board minutes December 31, 2008, p. 2; included as Exhibit DD to Proof of Claim.)  The Board had previously determined to contribute $10 million to the Bank, which it satisfied by cancelling a $14.9 million outstanding debt from the Bank to AFC, which contribution represented full satisfaction of this commitment.  This commitment was limited and does not evidence the commitment alleged by the FDIC-R in the instant proceedings.

7

The same is true for consideration of the FDIC-R's position.  The FDIC-R makes three arguments in support of its position that AFC made a commitment to infuse capital into AmTrust Bank.  The first argument is that AFC made such commitment in its internal 2008 Capital Management Policy adopted by the AFC Board of Directors during its July 30, 2008 board meeting.  [See Exhibit G to Proof of Claim].  This policy laid out certain "capital management objectives" and established risk assessment and other capital monitoring and management procedures.  This internal operating policy, however, contains no promise or commitment by AFC to the OTS to support the capital of AmTrust Bank.  The capital management policy is simply not a legally binding commitment.  In any event, there is no Title 12 or other federal non-bankruptcy law implicated in any substantial and material analysis concerning this argument of the FDIC-R.

The second alleged commitment is based on the alleged requirement in paragraph 8 of the Order to Cease & Desist (CN08-16) issued by the OTS to AFC on November 19, 2008 (the "AFC C&D," attached to the Proof of Claim as Exhibit M), which provides that the Board of Directors of AFC: "shall ensure that [AmTrust Bank] complies with all the terms of its Order to Cease and Desist issued by OTS on November 19, 2008."  Notably, this provision is expressly and specifically that of AFC's Board of Directors and not AFC.  The provision merely acknowledges the Board's corporate governance capacity to act in a way that would enable the Bank to comply with the OTS requirements.  Not only is this not a commitment of AFC, more importantly, it is not a commitment to infuse equity into AmTrust Bank.  Again, there is no Title 12 or other federal non-bankruptcy law implicated in any substantial and material analysis concerning this argument.

The third argument is that the AFC C&D required AFC to submit a capital plan to OTS. AFC satisfied this requirement by submitting jointly with AmTrust Bank a Risk Reduction Plan. This Plan specifically states that "[t]he Plan assumes that no further capital contributions will be received from the holding company or outside sources[.]". No dispute: The OTS accepted the submission of the Risk Reduction Plan by issuing a letter of non-objection to AFC dated February 20, 2009. Thus, this argument also fails to establish any commitment within the meaning of Section 365(o) of the Bankruptcy Code and does not require any substantial and material analysis of Title 12 or other federal non-bankruptcy law.

The issues raised by both parties in support of their positions do not require substantial analysis or application of law to fact concerning Title 12 or other federal non-bankruptcy law. Rather, under both parties' positions, the trier of fact can determine whether a commitment was made as provided in Section 365(o) by examining the language and intent of business documents, placing them in the appropriate historical context.

Courts routinely deny motions to withdraw the reference when they merely need to consult and interpret non-bankruptcy law. For instance, in *Holland v. LTV Steel Co., Inc.*, Judge Economus denied the United Mine Workers' motion to withdraw the reference of an adversary proceeding in which it alleged LTV's termination of benefits to its members violated Section 9711 of the Coal Act. 288 B.R. 770. The prevailing legal issue to be determined was whether LTV remained "in business" for purposes of Section 9711 of the Coal Act. *Id.* at 773. In denying the motion, Judge Economus held that the "in business requirement" of Section 9711 was neither one of first impression nor one presenting novel issues of statutory interpretation of non-Bankruptcy Code issues. Consequently, he concluded, the Bankruptcy Court only needed to apply the facts of the case to a well established precedent. *Id.* at 774. Such application Judge

Economus reasoned fell "squarely outside the mandatory withdrawal provisions of section 157(d)." *Id.* Compare *Franklin Savings Assoc. v. Office of Thrift Supervision*, 150 B.R. 976, 981-982 (D. Kan. 1993) ("These cases do not entail the simple or routine application of the law to the facts . . . cases cannot be resolved without making a significant interpretation of the Home Owners' Loan Act, as amended by FIRREA . . . judicial review of the Director's decision to replace a conservator . . . one of first impression in the Tenth Circuit."). Applying non-bankruptcy law rather than interpreting novel concepts of non-bankruptcy law does not require withdrawal of reference.

> D.      The Issues to be Determined Concern Matters of Bankruptcy Law and Interpretation of 11 U.S.C. § 365(o)

Courts that have addressed Section 365(o) have not relied on any material analyses of Title 12 or other federal law. Indeed, the courts have relied on such basic tools of analysis as Black's Law Dictionary's definition of "commitment" (*see Resolution Trust Co. v. First Corp., Inc.* (*In re First Corp., Inc.*), 973 F.2d 243, 249 (4th Cir. 1992); *In re Overland Park Fin. Corp.*, 236 F.3d 1246, 1252 (10th Cir. 2001)) or on straightforward contract principles (*see Wolkowitz v. FDIC* (*In re Imperial Credit Industry, Inc.*), 527 F.3d 959, 966 (9th Cir. 2008)). None of these decisions relied on Title 12 of the United States Code to interpret whether a commitment had been made under Section 365(o). Similarly, the Bankruptcy Court is capable of determining the present controversy by simply addressing the relevant Bankruptcy Code provisions and the relevant documents.

The FDIC-R does not cite Title 12 with respect to any material portion of its arguments in support of the alleged AFC commitment to infuse capital in AmTrust Bank. Rather, in an elegant obfuscation, the FDIC-R cites to multiple sections of Title 12 in footnotes 7-28, all dealing with the powers of the Office of Thrift Supervision. While the citations may be accurate,

the FDIC-R misdirects the analysis:  The issue to be determined under Section 365(o) is not the general nor specific power of the Office of Thrift Supervision, but rather the factual determination as to whether a legally binding commitment as provided in Section 365(o) was made by AFC.

Despite the fact that Section 365(o) of necessity deals with institutions regulated by a federal governmental agency, Congress did not write the jurisdictional provisions of 28 U.S.C. § 157 to provide for withdrawal of the reference of matters requiring a determination or interpretation of Section 365(o).  (Compare Section 157(d) and Section 157(a)(5) where the District Court is required to "order that personal injury tort and wrongful death claims shall be tried in the district court. . . .")  Obviously, Congress knew which cases it intended to have the District Court resolve.  No similar reference is made in 28 U.S.C. § 157 to claims or motions arising under Section 365(o) of the Bankruptcy Code.

Merely chanting incantations of Title 12 or the Home Owners' Loan Act, 12 U.S.C. § 1461 ("HOLA") is insufficient to require this Court to take a true bankruptcy matter away from the Bankruptcy Court.  For instance, in *In re Anderson*, Chief Judge Bernard Friedman of the Eastern District of Michigan addressed the mortgage lender's argument that the case required withdrawal of reference because the matter necessarily implicated HOLA and the Real Estate Settlement Procedures Act ("RESPA").  395 B.R. 7 (E.D. Mich. 2008).

Judge Friedman rejected Countrywide's motion finding that resolution of Anderson's claims would not require substantial and material consideration of HOLA or RESPA.  *Id.* at 11.  Instead, Judge Friedman concluded, Anderson's claims sounded purely in bankruptcy law – the relief she sought was a declaration that Countrywide be enjoined from committing future violations of the automatic stay, the confirmed plan and the discharge provisions.  *Id.*  Judge

Friedman determined that while HOLA and RESPA may have some relevance in evaluating the legitimacy of Countrywide's accounting methods and its inclusion or exclusion of certain items from its claim, the bankruptcy court would not be required to make a significant interpretation of those statutes.  *Id.*

E.    Case Law Cited by the FDIC-R is Inapplicable to the Proceedings Before this Court

The FDIC-R cites this Court to four cases in support of its request for mandatory withdrawal of the reference.  *See* Withdrawal Motion at fn. 71.  (Two of the four cases are matters within the same Chapter 11, *In re Franklin Savings Assoc.*)  Three of the cases cite with approval Judge Aldrich's *In re White Motor* decision and Judge Crow in his *Franklin Savings Association* decision goes to great lengths to approve and adopt Judge Aldrich's *White Motor* analysis.

None of these cases involves the types of factual or legal issues involved in the present case and each is readily distinguishable.  First, unlike the matters under consideration here, all the cases cited by the FDIC-R involve adversary proceedings, two of which involved jury demands as to which bankruptcy courts at the time were not empowered to empanel a jury for the final determination of a matter.

Most importantly, in each case, Bankruptcy Code provisions were not paramount and distinct questions of Title 12 law were central to any determination by the court and therefore sufficient to fall "within the narrow circumstances for mandatory withdrawal."  *In re Mid America Entm't Plus, Inc.*, 135 B.R. 419, 422 (D. Kan. 1991).  In one, the issue was "whether derivative claims asserted by a Chapter 7 Trustee against individual directors belong exclusively to the FDIC as Receiver."  *Lubin v. Cincinnati Ins. Co.*, 411 B.R. 801, 804-805 (N.D. Ga. 2009) (where the court found that permissive withdrawal of reference was also appropriate because of

12

the jury trial demand.)  In the second case, the Chapter 7 Trustee filed an adversary complaint with a jury demand against the Resolution Trust Corporation for a breach of a settlement agreement to purchase a casino.  The District Court considered the RTC's defense that one must first exhaust administrative remedies in the bank's own receivership proceedings before proceeding to court under 12 U.S.C. § 1821(a)(5), and the need to first determine whether subject matter jurisdiction exists in light of 12 U.S.C. § 1821(d)(13)(o), noting "without exception the courts have construed the exhaustion of administrative remedies provided in the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") as a prerequisite to subject matter jurisdiction."  *In re Mid America Entm't Plus, Inc.*, 135 B.R. at 422. Under those circumstances, the District Court found that the case falls "within the narrow circumstance for mandatory withdrawal" since "the RTC jurisdictional defense appears to be a central issue in the adversary action."  *Id.*  Finally, in *Franklin Savings Assoc. v. Office of Thrift Supervision*, the District of Kansas Court in its 1993 opinion concluded:

> These cases do not entail the simple or routine application of the law to the facts.  Indeed, the cases cannot be resolved with making a significant interpretation of the Homeowners' Loan Act as amended by FIRREA.  For example, an issue raised in OTS' pending motion to dismiss is whether the Act allows for judicial review of the Director's decision to replace a conservator appointed not for the purposes of liquidation with a receiver appointed for the purpose of liquidation.  This issue is one of first impression in the Tenth Circuit.  In addition, the plaintiff not only challenged the statutory authority of a Director to replace a conservator with a receiver but also the statutory and regulatory proceedings for doing so.  It is beyond real dispute that the court must give substantial and material consideration to a federal statute regulating interstate commerce, specifically 12 U.S.C. § 1464(d)(2), in resolving these cases.  The court also believes a serious conflict exists between Code and non-Code law over the bankruptcy court's jurisdiction of an action to remove a receiver brought by the thrift holding company.

13

150 B.R. at 981-982.[5]

Given these factors described by Judge Crow (and not found in our case), the reference was withdrawn in a *Franklin Savings Corp.* adversary proceeding not because of the Section 365(o) issue subsequently addressed by a different judge in separate proceedings (*Franklin Savings Corp. v. Office of Thrift Supervision*, 303 B.R. 488 (D. Kan. 2004)), but because of the cumulative and involved history of the District Court in multiple proceedings, some original actions and other adversary proceedings. *See Franklin Savings Assoc. v. Office of Thrift Supervision*, 150 B.R. 976 as subsequently cited in *In re Franklin Savings Corp v. Office of Thrift Supervision,* Case No. 91-41518-11, Adv No. 92-7154, Adv. No. 93-7001, 1994 Bankr. LEXIS 46 (Bankr. D. Kan. Jan 18, 1994), and cited in the District Court's Opinion ten years later, *Franklin Savings Corp. v. Office of Thrift Supervision*, 303 B.R. 488, 494, resulting in the 2004 decision rejecting the capital maintenance claim.  (For some of the lengthy litigious history of these  combatants, see fn. 3 at p. 490.)  As is clear from the initial 1993 District Court decision and 1994 Bankruptcy Court recommendation arising from a subsequent lawsuit, the complex and

---

[5] The fourth case cited by the FDIC-R, another and later decision in the litigious *In Re Franklin Savings Corp.* matter, *In re Franklin Savings Corp., Debtor, Franklin Savings Corp. v. Office of Thrift Supervision*, 1994 Bankr. LEXIS 46, Case No. 91-41518-11, Adv No. 92-7154, Adv. No. 93-7001 (Bankr. D. Kan. Jan. 18, 1994), followed Judge Crow's analysis of the prior year, recommending withdrawal of reference because of the "substantial and material" consideration analysis, multiple filings of identical actions in both District Court and Bankruptcy Court, and unique and novel interpretations of federal law.  While the 2004 United States District Court decision arising from this 1994 withdrawal of reference of the Bankruptcy Court did involve an issue of Section 356(o), it too was a novel one, resulting in the rejection of a 365(o) capital maintenance claim. Any fair reading of the withdrawal of reference recommendation by the Bankruptcy Court a decade earlier results in the inescapable conclusion that reference was withdrawn not because of a 365(o) issue, but because of the analysis a year before by the District Court, involving the same litigants in multiple proceedings in District Court as well as Bankruptcy Court.

14

multiple filings in multiple courts, combined with the novel issues of first impression, gave rise

to the withdrawal of reference, not the interpretation of the term "commitment" in Section 365(o).

In fact, the most recent opinion on the subject from Judge Economus in March 2010 (not

cited by the FDIC-R) may be the most applicable. *See In re Perdue*, 2010 U.S. Dist. LEXIS

35262. Addressing the arguments of the FDIC as Receiver for Washington Mutual concerning

HOLA, FIRREA, and the FDIC as Receiver's demand for mandatory withdrawal of reference,

Judge Economus applied the "substantial and material" test:

> Substantial and material consideration means that the claim
> requires not only the application of non-Bankruptcy Code law, but
> entails *significant* interpretation of non-Bankruptcy Code law.
> *Holland, 288 B.R. at 773*. No withdrawal is necessary if the
> Bankruptcy Court may conduct a straightforward application to a
> particular set of facts. *Sicherman v. Crosby (In re Rivera), 1:05-
> MC-065, 2005 U.S. Dist. LEXIS 22304, *5 (N.D. Ohio October 12,
> 2005).*
>
> Application of FIRREA to the instant matter will not require
> significant interpretation of non-Bankruptcy Code law. The
> Bankruptcy Court is perfectly capable of applying the provisions
> of FIRREA, including the jurisdictional provision, to the facts at
> hand.

*In re Perdue*, 2010 U.S. Dist. LEXIS 35262 at *10. The matter before this Court is no different

and "mandatory withdrawal of reference is not necessary" here. *Id.*

II.  Permissive Withdrawal of Reference is Inappropriate and Should be Denied

The permissive withdrawal provision of Section 157(d) allows a district court to

withdraw a proceeding "for cause shown" (first sentence of 28 U.S.C. §157(d)). Although

"cause" is not defined in the statute, courts have developed the following list of factors to

consider when making the determination: Judicial economy, the goals of promoting uniformity

in bankruptcy administration, reducing forum shopping and confusion, fostering the economical

use of the debtors' and creditors' resources, expediting the bankruptcy process, whether a party

has requested a jury trial and whether the proceeding is core or non-core.  *O'Neal v. Countrywide Home Loans, Inc. (In re O'Neal)*, Case No. 5:08-MC-00043, 2008 U.S. Dist. LEXIS 64437 at *10  (N.D. Ohio August 20, 2008) (Judge Gwin); *Holland*, 288 B.R. 770 (Judge Economus) (recognizing that the majority of Courts of Appeals rely on these factors to determine whether "cause" has been shown); *Buckeye Ret. Co., L.L.C., Ltd. v. Hake (In re Hake)*, Case No. 4:06 MC 00111, 2007 U.S. Dist. LEXIS 31238 (N.D. Ohio Apr. 27, 2007) (Judge Economus) (same).  In applying these factors, courts have emphasized that the "'cause requirement for permissive withdrawal reflects congressional intent to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy.'" *In re Hake*, 2007 U.S. Dist. LEXIS 31238 at *5.

Each of the "for cause" factors weighs heavily in favor of not exercising permissive withdrawal of the reference in this case.  Resolution of this litigation involves the allowance or disallowance of a proof of claim, the priority of such claim and whether cure payments may be required.  Each of these matters is exclusively a creature of the Bankruptcy Code and is a core bankruptcy proceeding.[6]

The FDIC-R argues that it would be wise for this Court to take these matters from the Bankruptcy Court because it promotes judicial economy, reasoning that in light of an appeal, the District Court will be required to consider some or all of these issues in any event.  *See* Withdrawal Motion at 19.  If this argument were accepted, it would require every motion to withdraw the reference to be granted.  To the contrary, Debtors submit that if an appeal is taken, the District Court will be better equipped to address the issues on a well-developed record below.

---

[6] "Core proceedings" include but are not limited to (a) matters concerning the administration of the estate, (b) allowance or disallowance of claims.  28 U.S.C. § 157(b)(2) (A&B).

Moreover, it is difficult to understand how judicial economy would be furthered by withdrawing reference of the Bankruptcy Code Section 365(o) cure motion and the request for allowance of the FDIC-R's claim for priority treatment under Section 507(a) of the Bankruptcy Code, both core matters, when those are precisely the type of matters that routinely are and should be adjudicated by the Bankruptcy Court given its particular expertise and experience and familiarity with bankruptcy law. *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2nd Cir. 1993) ("Hearing core matters in a district court could be an inefficient allocation of judicial resources given that the bankruptcy court generally will be more familiar with the facts and issues"); *In re Hake*, 2007 U.S. Dist. LEXIS 31238 at *5 (the fact that a proceeding is a core proceeding favors denying the motion for permissive withdraw); *In re Mathson Indus., Inc.*, 408 B.R. 888, 892 (E.D. Mich. 2009) ("[B]ecause this action is a core proceeding, the factors regarding efficiency and judicial economy also weigh against withdrawal of the reference"); *Anderson*, 395 B.R. 7, 11 (because the bankruptcy court is already familiar with the facts of the case and has special expertise in bankruptcy law, judicial economy is better served by allowing the bankruptcy court to handle the core proceedings).  The prompt adjudication of these matters in Bankruptcy Court will aid in the conclusion of these Chapter 11 cases in a prompt fashion.

The FDIC-R also argues that this matter should be withdrawn from the Bankruptcy Court using "the sky is falling" argument, *i.e.,* the issue of whether binding commitments exist here could have far reaching implications for other Chapter 11 cases.  *See* Withdrawal Motion at 20. A similar argument was soundly rejected by Judge Economus in *Holland v. LTV Steel Co., Inc*. There, the trustee argued that if challenges to the debtors' obligations under Section 9711 of the Coal Act were successful, the benefits of all retired miners under the Coal Act would be jeopardized.  *Holland*, 288 B.R. at 774.  The trustee claimed that an issue of such importance,

and one with such far reaching consequences, should be decided by the district court.  *Id.*  In denying the motion for permissive withdrawal, Judge Economus found that the argument failed to take into account the bankruptcy court's expertise and experience in dealing with bankruptcy proceedings and the bankruptcy issues.  *Id.*  Such expertise, he reasoned, was "of particular primacy" where the decision was of "great significance" to the ultimate issue in the case.  *Id.* at 775.

Here, the fact that a decision concerning the allowance and priority afforded to a claim in bankruptcy court may have implications in other similar Chapter 11 cases does not change the analysis of whether the Bankruptcy Court is in the best position to resolve core bankruptcy matters.  To be sure, the validity of the FDIC-R's purported priority claim under 11 U.S.C. § 507 and its request for cure under 11 U.S.C. § 365(o) are central issues in the prompt administration of these Chapter 11 cases, and will likely determine whether these cases continue in Chapter 11 or convert to Chapter 7.  Given the Bankruptcy Court's specialized talent and expertise in resolving core bankruptcy matters such as these, and given the importance of these issues to the administration of the these cases, both factors to be analyzed under *In re O'Neill, Holland* and *In re Hake*, these claims should remain with the Bankruptcy Court and the FDIC-R's motion for permissive withdrawal should be denied.  *See also Anderson*, 395 B.R. 7, 11 ("To state the obvious, the bankruptcy court exists to handle bankruptcy matters.  It has a special expertise in this area of the law, and cases within this area of expertise should not be withdrawn without good cause").

In summary, permissive withdrawal is unwise.

<u>CONCLUSION</u>

The Motion for Withdrawal of Reference should be denied so that no delay occurs in the administration and adjudication of any matter in the underlying Chapter 11 proceeding.

Respectfully submitted,


*/s/Richard Gurbst*
Richard Gurbst (0017672)
rgurbst@ssd.com
Philip M. Oliss (0066528)
poliss@ssd.com
G. Christopher Meyer (0016268)
cmeyer@ssd.com
SQUIRE, SANDERS & DEMPSEY L.L.P.
127 Public Square, Suite 4900
Cleveland, Ohio  44114-1304
Telephone: (216) 479-8500
Facsimile: (216) 479-8780

and

Stephen D. Lerner (0051284)
slerner@ssd.com
SQUIRE, SANDERS & DEMPSEY L.L.P.
221 E. Fourth Street
Suite 2900
Cincinnati, Ohio  45202
Telephone:  (513) 361-1200
Facsimile:  (513) 361-1201

Counsel for Debtors

<u>CERTIFICATE OF SERVICE</u>

This is to certify that on the 22nd day of April, 2010, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/Richard Gurbst*
Richard Gurbst